# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JEFFREY A. LENIG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:11-CV-186-TLS |
| ) | |
| JOSHUA SPONAUGLE, in his official ) | |
| capacity as Starke County Sheriff's Deputy, ) | |
| OSCAR COWEN, Jr., in his official ) | |
| capacity as Sheriff of Starke County, ) | |
| JIM GASKILL, in his official capacity as ) | |
| Porter County Sheriff's Deputy, DAVID ) | |
| LAIN in his official capacity as Sheriff of ) | |
| Porter County, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [ECF No. 39] filed by Defendants Joshua Sponaugle and Oscar Cowen, Jr., on October 2, 2012 and a Motion for Summary Judgment [ECF No. 43] filed by Defendants Jim Gaskill and David Lain on October 5, 2012.

## PROCEDURAL BACKGROUND

On March 14, 2011, the Plaintiff, Jeffrey A. Lenig, filed a Complaint [ECF No. 1] in Porter County Superior Court against: Joshua Sponaugle in his official capacity as Starke County Sheriff's Deputy; Oscar Cowen in his official capacity as Sheriff of Starke County; Jim Gaskill in his official capacity as Porter County Sheriff's Deputy; and David Lain in his official capacity as Sheriff of Porter County, raising claims of false arrest, malicious prosecution, assault and battery, and intentional infliction of emotional distress. The Plaintiff filed a First Amended Complaint [ECF No. 2] on April 1, 2011, against the Defendants for false arrest, malicious

prosecution, assault and battery, and intentional infliction of emotional distress. On May 12, 2011, the Plaintiff filed a Second Amended Complaint [ECF No. 3] against the Defendants for false arrest, assault and battery, illegal confinement, unlawful coercion and intimidation, and denial of equal protection, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.[1] Defendants Gaskill and Lain filed an Answer [ECF No. 13] to the Second Amended Complaint on June 28, 2011. Defendants Sponaugle and Cowen filed an Answer [ECF No. 14] to the Second Amended Complaint on July 7, 2011.

On October 2, 2012, Defendants Sponaugle and Cowen filed a Motion for Summary Judgment [ECF No. 39] accompanied by a Memorandum in Support [ECF No. 40] and an Appendix of Evidence [ECF No. 41]. Shortly thereafter, on October 5, Defendants Gaskill and Lain filed a Motion for Summary Judgment [ECF No. 43] accompanied by a Memorandum in Support [ECF No. 44] with designated evidence. On November 1, after the Court granted the Plaintiff's requests for an extension of time in which to file a response to the Defendants' Motion, the Plaintiff filed a Response in Opposition [ECF No. 48] to Defendants' Motions for Summary Judgment.[2] Defendants Sponaugle and Cowen filed a Reply in Support of Motion for Summary Judgment [ECF No. 50] on November 6, and Defendants Gaskill and Lain filed a Reply in Support of Motion for Summary Judgment [ECF No. 52] on November 26.

## SUMMARY JUDGMENT STANDARD

---

[1] In his Response in Opposition, the Plaintiff only addresses his claim for false arrest against the Defendants.

[2] In his Response, the Plaintiff voluntarily dismisses Defendants Cowen and Lain from the instant action. The Court will consider the Plaintiff's remaining claims against Defendants Sponaugle and Gaskill.

2

The standards applicable to summary judgment are well established. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed"). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

Fed. R. Civ. P. 56(c)(1). Additionally, as set forth in Rule 56(e):

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e)(1)–(4).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## FACTUAL BACKGROUND

On the evening of April 17, 2009, law enforcement officers from the Starke County Sheriff's Department engaged in pursuit of a criminal suspect. During the pursuit, the suspect fled the scene in his truck, striking a squad car in the process and endangering the lives of two

4

officers. The suspect later abandoned his vehicle and fled on foot in a rural area of Starke County.

In the early hours of April 18, 2009, law enforcement officers, including members of the Porter County Sheriff's Department and the Starke County Sheriff's Department, began to search for the suspect in an area near the Plaintiff's residence in Starke County. David Combs, a Detective with the Knox Police Department, parked his vehicle near the Plaintiff's driveway. (Combs' Aff. ¶ 2, ECF No. 41-1.) At about 1:00 A.M., the Plaintiff awoke to the sound of his dog barking. (Lenig Deposition 16, ECF No. 44-3.) From his residence, the Plaintiff viewed flashing red and blue lights. (*Id.* 18.) He then drove his pickup truck to the bottom of his driveway and approached Detective Combs' vehicle to inquire as to why Detective Combs was parked near his residence. (*Id.* 17–18.) Detective Combs explained that law enforcement officers were tracking a dangerous fugitive with K-9 units in the woods around the Plaintiff's residence and instructed the Plaintiff to return to his residence and stay inside. (Combs' Aff. ¶ ¶ 3–6.) The Plaintiff complied with Detective Combs' instruction, returned to his residence, and went back to bed. (Lenig Deposition 19.)

As part of the manhunt, Defendants Sponaugle and Gaskill worked with a Porter County K-9 unit to track the suspect. (Sponaugle Report, ECF No. 44-1 at 21.) Around 2:50 A.M., the K-9 unit tracked a path near the Plaintiff's residence. (Sponaugle Report 1.) The Plaintiff awoke around this time due to his dog barking and the sight of two flashlights in his front yard. (Second Am. Compl. ¶ 12, ECF No. 3.) He then went downstairs and out on his patio to investigate. (*Id.* ¶ 13.) Defendant Sponaugle observed the Plaintiff on his patio with a dog. (Sponaugle Report 1.) The Plaintiff's dog was unleashed and its presence caused the K-9 unit to lose its track for 15-20

seconds. (Sponaugle Criminal Testimony, ECF No. 44-1 at 18–19.) Defendant Gaskill was concerned for the potential of a conflict between the two dogs. (Gaskill Criminal Testimony, ECF No. 44-2 at 12.) The Defendants were in uniform (Gaskill Report, ECF No. 44-1 at 25) and identified themselves as law enforcement officers. (Second Am. Compl. ¶ 14.)

The parties offer conflicting accounts of what occurred next.[3] Undisputedly, Defendant Gaskill requested that the Defendant return to his residence for his safety, the safety of the Plaintiff's dog, and the safety of law enforcement officers. (Sponaugle Report 1). In response, the Plaintiff stated, "You couldn't have fucking called me?" (Lenig Deposition 30.) The Defendants explained that they did not know the Plaintiff's phone number. (*Id.* 35.) An argument between the parties ensued. Defendants Sponaugle and Gaskill walked towards the Plaintiff's porch, and Defendant Sponaugle informed the Plaintiff that if he continued to fail to comply with the Defendants' orders, he would be arrested. (Sponaugle Report 1; Gaskill Report 1.) The Plaintiff went back to the door of his residence, stopped on the steps, and turned around to observe the Defendants. (Lenig Deposition 37.)

Again, the parties dispute much of what happened next.[4] After the Plaintiff returned to

---

[3] In the Plaintiff's version, he was blinded by the Defendants' flashlights and was unable to determine whether they were actually law enforcement officers. Suspicious of their authority, the Plaintiff questioned why they were on his property and why they had not notified them that they would be on his property. According to the Plaintiff, a "heated discussion" ensued and the Defendants began yelling at him without cause.

In the Defendants' version, the Plaintiff ignored their repeated requests for the Plaintiff to return to his residence with his dog. According to the Defendants, the Plaintiff continued to remain on the porch with his dog and yell at the officers.

[4] According to the Plaintiff, the Defendants continued to shine their flashlights in his face. (*Id.*) Defendant Gaskill began to scream at the Plaintiff to get inside his house. (*Id.* 39.) The Plaintiff remained standing on the steps in front of the door and did not respond to Defendant Gaskill's screaming. (*Id.*) The Defendants then began to advance in the direction of the Plaintiff. (*Id.*) As the Defendants walked across the patio, the Plaintiff retreated to the doorway. (*Id.* 40–41.) The Defendants subsequently lowered their

6

the steps of his residence, the following facts are undisputed: the Defendants began to approach the residence, walking across the patio towards the Defendant on the steps. (*Id.* 39.) At some point, the Plaintiff retreated from the steps into the doorway. The Defendants informed the Plaintiff that he was under arrest. (Sponaugle Report 1; Gaskill Report 1.) At that time, the Plaintiff attempted to close the door. (Lenig Deposition 43–44.) The Defendants pushed open the door and placed the Plaintiff under arrest. (*Id.* 44–45.) Based on his alleged actions, the Plaintiff was charged with resisting law enforcement, disorderly conduct, and battery on a law enforcement officer. (Sponaugle Report 2.)

The Starke County Prosecutor, Julianne K. Havens, subsequently approved the prosecution of the Plaintiff based on her belief that probable cause existed for his arrest and prosecution for resisting law enforcement, disorderly conduct, and battery on a law enforcement officer. (Havens Aff. ¶ 2 , ECF No. 41-1.) Judge Pro Tem Charles Weaver of Knox City Court

---

flashlights, at which time the Plaintiff was able to see their uniforms. (*Id.* 42.) From the doorway, the Plaintiff asked the Defendant "if they were happy now, [he] was back in the house." (Lenig Deposition 42.) The Plaintiff then started to shut the door, which prompted Defendant Gaskill to say, "We would not put up with this bullshit in Porter County." (*Id.* 43.) In response to this statement, the Plaintiff opened the door and asked Defendant Gaskill if Defendant Gaskill was talking to him. (*Id.*) Defendant Gaskill informed the Plaintiff that he was "going to jail." (*Id.*) After hearing this, the Plaintiff shut the door on the Defendants. (*Id.*) The Defendants then forced the door open, forced the Plaintiff to the ground, and placed him under arrest. (*Id.* 43–45.) The Plaintiff denied pushing or striking the Defendants. (Lenig Deposition 46.)

The Defendants' account contrasts sharply with that of the Plaintiff. After the Plaintiff returned to the steps of his residence, the Defendants began to walk away from the residence to continue their tracking with the K-9 unit. (Sponaugle Report 2; Gaskill Report 2.) As they departed, the Plaintiff began to yell and curse at them again. (*Id.*) In response, the Defendants returned to the residence and informed the Plaintiff that he was under arrest. (*Id.*) The Plaintiff continued to yell at the Defendants and assumed an aggressive stance. (*Id.*) Defendant Sponaugle attempted to grab the Plaintiff's wrist as the Plaintiff stepped back into the doorway of the residence. (*Id.*) The Plaintiff then "attempted to slam the door," striking Defendant Sponaugle in the head with the door in the process. (Sponaugle Report 2.) To prevent the Plaintiff from shutting the door, both Defendants grabbed the door. (Sponaugle Report 2; Gaskill Report 2.) Defendant Sponaugle repeated that the Plaintiff was under arrest and ordered him to stop resisting. (*Id.*) The Defendants entered the residence at which time the Plaintiff attempted to push Defendant Sponaugle. (*Id.*) The Defendants subdued the Plaintiff and placed him under arrest. (*Id.*)

found the Plaintiff not guilty of the charges against him. The Plaintiff subsequently filed the instant lawsuit.

## ANALYSIS

**A.     Official Versus Individual Capacity**

The Plaintiff brought this civil action against the Defendants pursuant to 42 U.S.C. § 1983. Section 1983 imposes liability on any "person" who, while acting under color of state law, deprives an individual of federally protected rights. 42 U.S.C. § 1983. Actions under § 1983 against individual defendants in their official capacities are treated as suits brought against the government entity itself. *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) Individual capacity suits "'seek to impose personal liability on government officials for actions taken under color of state law.'" *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Curiously, the Plaintiff's Second Amended Complaint raises claims for monetary damages against the Defendants in their official capacities only. The Defendants argue that the official capacity claims against them should be dismissed because government officers acting in their officials capacities are not persons subject to action for monetary damages under § 1983. Further, to the extent that the Plaintiff's claims could be construed as claims against Starke County and Porter County, the Defendants contend that the Plaintiff has failed to present any evidence that his constitutional rights were violated by an official policy or custom of Starke County or Porter County. In his Motion in Opposition, the Plaintiff proceeds without addressing

8

the Defendants' argument and states, "since Lenig's claims are against Sponaugle and Gaskill, *individually*, Lenig must overcome the qualified immunity which protects police officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable [person] would have known." In Reply, Defendant Sponaugle argues that "the Plaintiff did not address the undisputed fact that Sponaugle has been sued only in his official capacity as Starke County Sheriff's Deputy and has therefore conceded that Joshua Sponaugle cannot be held liable in his personal or individual capacity." Like Defendant Sponaugle, Defendant Gaskill emphasizes that he was sued in his "official capacity" only. Both Defendants reiterate that the claims against them should be dismissed because government officers acting in their official capacity are not persons subject to action for monetary damages under § 1983.

To the extent that the Plaintiff's Complaint could be construed as raising an official capacity claim against the Defendants, the Plaintiff has not identified any custom or policy of the Starke County Sheriff's Department or Porter County Sheriff's Department that would support such a claim. For this reason, and because the Defendants' briefs fully address the Plaintiff's personal capacity claims against them, the Court considers the Plaintiff's individual capacity claims only.

**B.     False Arrest**

Probable cause is an absolute defense to any § 1983 claim against police officers for wrongful arrest. *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). Probable cause to justify

9

an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). "This standard does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012) (internal quotation omitted). Significantly, "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (emphasis in original) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006)).

"The existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, 705 F.3d at 715 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Thayer*, 705 F.3d at 246–47). Here, the Plaintiff has pursued a claim of false arrest for resisting law enforcement, disorderly conduct, and battery on a law enforcement officer against the Defendants. (Second Am. Compl. ¶ 38.) However, in his Response brief, the Plaintiff only contests the Defendants' request for summary judgment on the claims related to his arrest for disorderly conduct and resisting arrest. (Pl.'s Response in Opp. 12–14.)

1.  *Disorderly Conduct*

The Defendants argue that the Plaintiff's behavior on the night in question established probable cause for his arrest on a charge of disorderly conduct. Citing *Blackman v. State*, 868 N.E.2d 579 (Ind. Ct. App. 2007), the Defendants maintain that the Plaintiff's continuous yelling interfered with their ability to conduct a criminal investigation. In response, the Plaintiff counters that he complied with the Defendants' request that he return to his residence and brought his dog inside the residence with him. According to the Plaintiff, at the time the Defendants' announced their intent to arrest the Plaintiff, he was neither yelling nor cursing at the Defendants and was not interfering with their investigation. In their respective Reply briefs, the Defendants emphasize that the Plaintiff failed to identify any evidence creating a genuine issue of material fact.

Under the Indiana Code, a person who recklessly, knowingly, or intentionally makes unreasonable noise and continues to do so after being asked to stop commits disorderly conduct. Ind. Code § 35-45-1-3(a)(2) (2013). In accordance with the disorderly conduct statute, noise is "unreasonable" if it is too loud for the circumstances. *See Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996) (holding that the disorderly conduct statute prohibits "context-inappropriate volume."); *Yowler v. State*, 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008) (finding that the yelling of loud profanities was sufficient to sustain a conviction for disorderly conduct where the yelling drew the attention of neighbors); *Blackman v. State*, 868 N.E.2d 579, 584 (Ind. Ct. App. 2007) ("To support a conviction for disorderly conduct, the State must prove that a defendant produced decibels of sound that were too loud for the circumstances."). "[T]he prohibition against unreasonable noise in Indiana's disorderly conduct statute . . . is aimed at the intrusiveness and loudness of expression, not whether the content of the language is obscene or provocative."

*Hooks v. State*, 660 N.E.2d 1076, 1077 (Ind. Ct. App. 1996).

At approximately 3:00 A.M. on April 18, 2009, the Defendants began a search with the aid of a K-9 unit for a fugitive in the area around the Plaintiff's residence. As they approached the Plaintiff's residence, the Defendants observed the Plaintiff on his patio with his dog. The K-9 unit became distracted for 15-20 seconds due to the presence of the Plaintiff's unleashed dog. Defendant Gaskill was concerned for the safety of the K-9 unit and the Plaintiff's dog—K-9 units are dominant animals by training and the presence of the Plaintiff's dog could have potentially led to an altercation between the two dogs. The Defendants announced that they were police officers and requested that the Plaintiff go back inside his residence for his safety, their safety, and the safety of the dogs. This request led to a "heated discussion" (Lenig Deposition 33) during which the Plaintiff "talked loudly" over a distance of approximately 60-70 feet (*id.* 66) and stated "You couldn't have fucking called me?" in response to the Defendants' instruction to return to his residence (*Id.* 36).[5] The heated discussion between the parties was loud enough to wake Jessica Marquez, who was the girlfriend of one of the Plaintiff's sons and was staying at the Plaintiff's residence that night. (Marquez Deposition 84–85, ECF No. 44-4.) Marquez awoke to the sound of multiple men yelling, including the Plaintiff whose "voice was raised." (*Id.*)

The Plaintiff did not comply with the Defendants' first request that he go back inside his residence. (Lenig Deposition 60.) The Defendants had to make their request that the Plaintiff

---

[5] In his deposition, the Plaintiff initially denied raising his voice in response to the Defendants' request that he return to his residence. (Lenig Deposition 36.) Later in the Deposition, the Plaintiff stated "I don't recall if I was speaking loud or not." (*Id.* 61.) Finally, the Plaintiff conceded that he was "talking loud" with the Defendants during the "heated discussion." (*Id.* 66.) Throughout his deposition, the Plaintiff maintained that the Defendants were yelling or screaming at him.

return to his residence "at least" twice before he complied. (*Id.* 61.) After the Plaintiff failed to comply with the Defendants' instructions, Defendant Sponaugle advised the Plaintiff that if he "continued to yell and be belligerent and not return to his residence [that] he would be arrested." (Sponaugle Report 2.) The situation further escalated, which led to charges of resisting arrest.

The Indiana Supreme Court's decision in *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996) is instructive here. In *Whittington*, the defendant was charged with disorderly conduct after "cursing, yelling, and acting in a belligerent manner" when police officers responded to a 911 call regarding a domestic confrontation at his sister's apartment. *Id.* at 1366. The defendant allegedly struck his sister in the presence of his sister's boyfriend. *Id.* When police arrived, the defendant engaged in a heated confrontation with his sister's boyfriend and the responding officers were forced to separate the two men. *Id.* Despite being separated, the defendant continued to act in a loud and boisterous manner, agitating his sister's boyfriend, and ultimately leading to his arrest. *Id.* The Indiana Supreme Court found that a charge of disorderly conduct against the defendant was appropriate, observing that loud noise may be unreasonable for various reasons, including "[loud] outbursts [that] could agitate witnesses and disrupt police investigations. It could make coordination of investigations and medical treatment more difficult. Finally, loud noise can be quite annoying to others present at the scene." *Whittington*, 669 N.E.2d at 1367.

Consistent with *Whittington*, Indiana courts have repeatedly held that loud noises that interfere with a police investigation are grounds for a charge of disorderly conduct. *See, e.g.*, *J.D. v. State*, 859 N.E.2d 341 (Ind. 2007) (defendant's loud yelling obstructed and interfered with police officer's ability to investigate allegations of disturbance at a foster home); *Anderson*

*v. State*, 881 N.E.2d 86, 88 (Ind. Ct. App. 2008); *Blackman v. State*, 868 N.E.2d 579 (Ind. Ct. App. 2007); *Brittain v. State*, 565 N.E.2d 757 (Ind. Ct. App. 1990) ("hurling of epithets towards police officers" as they investigated allegations of a domestic disturbance constituted disorderly conduct); *City of South Bend v. Fleming*, 397 N.E.2d 1075 (Ind. Ct. App. 1979) (Police had probable cause to arrest plaintiff for violating disorderly conduct statute and he was not entitled to recover from city and individual arresting officers for false arrest, where, after officers arrived at plaintiff's residence, he ordered them to leave his property and, when they did not, began shouting obscenities at them and refused to comply with officers' request that he settle down and speak in tone of voice not audible to neighbors). In *Anderson*, police officers responded to a request for assistance at a tanning salon where the defendant was refusing to leave a tanning booth. 881 N.E.2d at 88. Upon arrival, an officer requested that the defendant leave the tanning booth. *Id.* at 89. The defendant began swearing at the officer and continued to do so while dressing. *Id.* After refusing to leave, officers had to physically escort the defendant from the tanning salon as he continued cursing at the officers. *Id.* The defendant's cursing attracted the attention of numerous customers and he was arrested after refused to leave the salon's premises. *Id.* Because of the volume of the defendant's speech and its interference with the officers' investigation, the court of appeals upheld the defendant's conviction. *Id.* at 91.

  Similarly, in *Blackman*, police officers approached a parked vehicle in which the defendant and her brother were seated and arrested the defendant's brother on charges related to an ongoing narcotics investigation. 868 N.E.2d at 582. The arresting officer informed an assisting officer that he should conduct a pat-down search of the defendant. *Id.* When the officers asked the defendant to step out of the vehicle, the defendant became belligerent and loud. *Id.* at

14

582–83. After conducting a pat-down search, the officers asked the defendant to leave the scene; the defendant refused to comply with the officers' instructions and began shouting loudly enough to draw a crowd. *Id.* at 583. After the defendant failed to comply with the officers' second request to leave the scene and continued to shout, she was arrested for disorderly conduct. *Id.* The appellate court affirmed the defendant's conviction for disorderly conduct:

> The facts most favorable to the judgment indicate that the sheer volume of Blackman's outbursts disrupted the officers' investigation and attracted unwanted attention. The officers repeatedly asked Blackman to lower her voice and to leave the scene of their investigation. Blackman defiantly ignored their requests and shouted even louder. The ensuing commotion drew a crowd; a neighborhood resident emerged from her backyard; other neighbors emerged from their homes; passing drivers slowed and rolled down their car windows; and pedestrians stopped to make inquiries of the officers.

*Id.* at 584.

In *Nichols v. Town of Cedar Lake*, the Seventh Circuit addressed Indiana's disorderly conduct statute in the context of a § 1983 suit for false arrest. 131 F. App'x 488 (7th Cir. 2005). After a night of drinking at a bar with friends, Nichols was found by a police officer near a driveway on the ground with a wound to his head. *Id.* at 489. The officer called an ambulance and asked for Nichols' identification. *Id.* When the ambulance arrived, Nichols became aggressive and combative with the responding emergency medical technicians (EMTs). *Id.* Consequently, the police officer arrested Nichols for disorderly conduct and public intoxication. *Id.* The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendants, finding that the police officer had probable cause to arrest Nichols for disorderly conduct. *Id.* at 490–91. The undisputed evidence demonstrated that Nichols was "yelling and cussing and being vulgar and disorderly" when the EMTs were attempting to treat him. *Nichols*, 131 F. App'x at 490–91. "Officer Brittingham advised Nichols several times that he was going to

be arrested if he kept behaving in this manner, but Nichols continued and ultimately became aggressive towards the emergency medical technicians while they were attempting to load him onto the gurney." *Id.* at 491.

Here, the Plaintiff's actions leading to his arrest for disorderly conduct took place at 3:00 A.M. during the middle of a law enforcement search for a dangerous fugitive. Under these circumstances, the Defendants had probable cause to arrest the Plaintiff for disorderly conduct. By his own admission, the Plaintiff talked loudly over a distance of 60-70 feet and repeatedly ignored the Defendants' requests to cease interfering with their investigation and return to his residence. By his own admission, the Plaintiff engaged in a "heated discussion" with the Defendants and loudly asked the Defendants, "You couldn't have fucking called me?". The undisputed evidence demonstrates that the volume of the heated discussion was loud enough to wake a guest sleeping in the Plaintiff's house that evening. The undisputed facts indicate that, despite repeated warnings and requests to return to his residence, the Plaintiff interfered with the Defendants' investigation. His resulting arrest for disorderly conduct is consistent with the Indiana Supreme Court's decision in *Whittington* and similar cases from the Indiana courts of appeals. The probable cause standard requires that a law enforcement officer's belief that an arrestee was committing a crime be reasonable, *Abbott*, 705 F.3d at 714 (citing *Henry v. United States*, 361 U.S. 98, 102 (1959); *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010)), and here, in the Court's view, that standard was clearly met. The Plaintiff's claim for false arrest will be resolved in favor of the Defendants because the Court finds that the Defendants had probable cause to arrest the Defendant for disorderly conduct.

2. *Resisting Law Enforcement and Battery on a Law Enforcement Officer*

"[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (emphasis in original) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006)). Because the Courts finds that the Defendants had probable cause to arrest the Plaintiff for disorderly conduct, the Plaintiff's false arrest claims for resisting law enforcement and battery on a law enforcement officer are also precluded and summary judgment will be granted in the Defendants' favor.

**B.     The Plaintiff Has Abandoned His Remaining Claims**

In addition to his false arrest claims, the Plaintiff raises claims of excessive force, equal protection, assault and battery, illegal confinement, and unlawful coercion and intimidation. In their respective Memorandums of Law, the Defendants presented arguments in support of their request for summary judgment on these claims. In his response brief, the Plaintiff did not address these remaining claims and focused his attention solely on his false arrest claims. In their Responses, the Defendants argue that the Plaintiff has waived these remaining claims.

> It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered, and present their arguments to the Court before it enters final judgment. *If the opposing party fails to do so, the claim is deemed waived and the nonmoving party will lose the motion. Furthermore, the opposing party waives any argument that it does not present and develop in its memorandum of law in opposition to summary judgment.* A party's failure to meaningfully respond to a motion for summary judgment also constitutes waiver. A district court need not scour the record to determine whether there exists a genuine issue of fact to preclude summary judgment. Instead, the court can rely upon the non-moving party to show

such a dispute if one exists. In addition, a party will be deemed to have waived a claim for failing to cite both legal authority and supporting factual evidence. The nonmoving party has the burden to set forth specific facts showing a genuine issue for trial. Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of his claims.

*Dee v. City of Chi.*, — F. Supp. 2d —, 2012 WL 6605009, at *22 (N.D. Ill. Dec. 14, 2012) (emphasis added) (internal quotations, citations, and alterations omitted). Here, the Plaintiff has not presented any legal or factual reasons why summary judgment should not be entered in favor of the Defendants with respect to his claims of excessive force, equal protection, assault and battery, illegal confinement, and unlawful coercion and intimidation. Consequently, the Court will find that these claims are abandoned and will grant summary judgment in favor of the Defendants on these claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motions for Summary Judgment [ECF Nos. 39 & 43]. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff on his claims.

SO ORDERED on June 3, 2013.

                                       s/ Theresa L. Springmann
                                       THERESA SPRINGMANN
                                       UNITED STATES DISTRICT COURT
                                       FORT WAYNE DIVISION